IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **KENNETH PITT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:24-cv-00629** |
| | ) | **Judge Aleta A. Trauger** |
| **QUALITY CARRIERS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is defendant Quality Carriers, Inc.'s Motion to Dismiss. (Doc. No. 10.) Quality Carriers argues that the Complaint filed by defendant Kenneth Pitt must be dismissed under Rule 12(b)(5) for insufficient and untimely service of process and, alternatively, under Rule 12(b)(2) for lack of personal jurisdiction. For the reasons set forth herein, the motion will be denied.

## I.  PROCEDURAL HISTORY

Plaintiff Kenneth Pitt, through counsel, filed suit against Quality Carriers in this court on May 20, 2024, asserting employment discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, as well as a state law libel claim. (Doc. No. 1.) The Clerk of Court issued a Summons for Quality Carriers to plaintiff's counsel on July 1, 2024. (Doc. No. 7.) The Summons was directed to Quality Carriers at an address in Tampa, Florida. (*Id.*)

On September 17, 2024, the court, at the plaintiff's request, issued an Alias Summons directed to "CSC Corporation DBA Quality Carries [sic] Inc." at an address in Plantation, Florida. (Doc. No. 9.)

On October, 16, 2024, Quality Carriers filed its Motion to Dismiss. (Doc. No. 10.) In its contemporaneously filed Memorandum of Law, Quality Carriers asserts that it had (at that time) not yet been served, that the belated attempt to serve Quality Carriers through CSX Corporation, which is not a defendant in this lawsuit, was neither effective nor timely, and that the plaintiff has never provided "good cause" for his failure to serve process within the ninety days allotted by Federal Rule of Civil Procedure 4(m). (Doc. No. 11.) Quality Carriers also argues that, because it has never been served, the court lacks jurisdiction and should dismiss the Complaint on that basis as well.

On November 4, 2024, three weeks after the filing of the Motion to Dismiss, plaintiff's counsel filed a copy of the first Summons, which he had attempted to send by certified mail to Quality Carriers at an incorrect address, showing that it had been returned unexecuted, and a copy of the Alias Summons, which reflected that the process server had served the Summons and Complaint upon CSX Corporation "DBA Quality Carrie[r]s Inc" on October 15, 2024. (Doc. Nos. 12, 13.)

The plaintiff's Response to Motion to Dismiss was filed the same day. (Doc. No. 14.) The plaintiff asserts that after the first Summons was issued on July 1, 2024, the "U.S. Postal Service sent the summons back to Plaintiff's attorney as 'Return to Sender. Unclaimed Unable to Forward," on August 13, 2024. (*Id.* at 1.) The plaintiff asserts that he "researched and discovered" that Quality Carriers had been "bought out" by CSX Corporation. (*Id.*) Service was reissued on September 17, 2024, was "sent to Defendant"—actually to CSX Corporation—on October 19, 2024, and the summons was returned executed on November 4, 2024. (*Id.*)

Without acknowledging the defendant's argument that it cannot be served through CSX Corporation, the plaintiff argues that (1) the court may excuse a delay in service even if the plaintiff

fails to offer an excuse for the delay; and (2) the plaintiff had good cause for the delay in this case, because he "was unaware of the merger and had to do extra research after first attempting service." (*Id.* at 2.)

The defendant filed a Reply, asserting that, even after responding to the Motion to Dismiss, the plaintiff still had not effected service on Quality Carriers. It argues that the plaintiff fails to explain why he mailed the summons to an address that Quality Carriers has not used for seven years, when Quality Carriers' principal place of business is readily available on the internet and its agent for service of process in Tennessee is listed on the Tennessee Secretary of State's website,[1] and that the plaintiff's halfhearted efforts to serve the defendant within the time allowed by Rule 4(m) does not qualify as good cause. It also argues that CSX Corporation's acquisition of Quality Carriers "several years ago" is simply irrelevant, as Quality Carriers remains a separate entity with its own corporate identity, and CSX Corporation, as a corporate parent, is not authorized to accept service of process for Quality Carriers. The defendant also points out that the plaintiff's Response was filed outside the fourteen days permitted by Local Rule 7.01(a)(3).

Following this filing, the plaintiff waited another month before seeking a second Alias Summons, this time directed to Quality Carriers at its correct business address. (*See* Doc. Nos. 17, 18.) This time, service was apparently effected, as Quality Carriers filed a Supplemental Reply, acknowledging that its registered agent for service of process received a copy of the second Alias Summons and the Complaint on December 4, 2024, approximately six and one-half months (198 days) after the Complaint was filed on May 20, 2024. (Doc. No. 19 at 1.) It continues to argue,

---

[1] The court takes judicial notice that Quality Carriers has a registered agent for service of process in Tennessee, readily available through a business entity search on the Tennessee Secretary of State's website. The plaintiff's failure to use this address in the first place is inexplicable.

however, that the plaintiff has failed to make any effort to show good cause under Rule 4(m) for the delayed service of process and that dismissal under Rule12(b)(5) is warranted.

## II.    LEGAL STANDARDS

Rule 4 provides that, "[o]n or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal." Fed. R. Civ. P. 4(b). Once the summons is "properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant." *Id.*

Unless the defendant waives service under the procedure outlined in Rule 4(d), the plaintiff has ninety days to achieve service of process:

> If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specific time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). A Rule 12(b)(5) motion is the proper vehicle for challenging the failure to deliver a summons and complaint in accordance with Rule 4(m). *See generally* 5B Charles Alan Wright et al., Federal Practice & Procedure, Civ. § 1353 (3d ed.); *accord Savoie v. City of E. Lansing*, No. 21-2684, 2022 WL 3643339, at *2 (6th Cir. Aug. 24, 2022) (affirming dismissal under Rule 12(b)(5)).

If the plaintiff shows good cause for not effecting timely service of process, then extending the time for service is mandatory. *United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022). The Sixth Circuit has "identified three scenarios constituting good cause under Rule 4(m): (1) when the defendant has intentionally evaded service; (2) when the district court has committed an error; and (3) when a *pro se* plaintiff suffers from a serious illness." *Thul v. Haaland*, No. 22-5440, 2023 WL 6470733, at *2 (6th Cir. Mar. 1, 2023) (citing *Savoie*, 2022 WL 3643339, at *4), *cert. denied*, 144 S. Ct. 9623 (2023). "The common denominator in these

situations is that 'something outside the plaintiff's control prevents timely service.'" *Id.* (quoting *Savoie*, 2022 WL 3643339, at *4).

Even "absent a showing of good cause, the court retains discretion as to whether or not to enlarge that [time for service]." *Oakland Physicians*, 44 F.4th at 568 (citing *Henderson v. United States*, 517 U.S. 654, 662 (1996)). The Sixth Circuit has instructed district courts to consider the following factors in the exercise of that discretion:

> (1) whether an extension of time would be well beyond the timely service of process;
>
> (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit;
>
> (3) whether the defendant had actual notice of the lawsuit;
>
> (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, *i.e.*, would the plaintiff's lawsuit be time-barred;
>
> (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies;
>
> (6) whether the plaintiff is a *pro se* litigant deserving of additional latitude to correct defects in service of process; and
>
> (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

*Id.* at 569.

## III. DISCUSSION

The court finds as a threshold matter that the plaintiff has failed to establish good cause for the delay in service. The only attempt he makes to show good cause is that he was "unaware of the [purported] merger" between Quality Carriers and CSX Transportation and had to "do extra research after first attempting service." (Doc. No. 14 at 2.) This statement furnishes no acceptable excuse; five minutes of research on the front end would have revealed both the defendant's current business address and the address for its registered agent for service of process in Tennessee. The

fact that Quality Carriers was apparently acquired by CSX Transportation several years ago[2] did not alter Quality Carriers' corporate identity or provide a basis for serving Quality Carriers through CSX Transportation. Moreover, the timeline as revealed on the docket shows that the plaintiff apparently did not request a summons from the Clerk of Court until more than thirty-eight days after he filed the Complaint; he did not attempt to send the issued Summons and Complaint to the first incorrect address until July 11, 2024, already fifty-one days after the filing of the Complaint. (*See* Doc. No. 12 at 3.) The date on which the service packet was returned to sender as unclaimed is unclear from the envelope the plaintiff filed, but it appears to be dated August 13, 2024. Although the ninety-day period prescribed by Rule 4(m) was set to expire around August 18, 2024, the plaintiff did not at that time seek an extension of the deadline and, instead, waited another month before seeking an Alias Summons and serving Quality Carriers' corporate parent rather than Quality Carriers. The plaintiff's failure to serve Quality Carriers within the ninety days set forth in Rule 4(m) or to request an extension of the deadline before it expired were matters entirely within the plaintiff's control. He has not established good cause.

The question then is whether the court should exercise its discretion to extend the deadline, based upon its weighing of the factors stated above. Neither party addresses these factors or provides any guidance to the court as to how it should weigh them. The court nonetheless finds that the balance, just barely, tips in favor of extending the deadline for effecting service.

As for the first factor, the defendant was apparently served on December 4, 2024, 198 days after the Complaint was filed and 108 days after the 90-day deadline expired. The length of this

---

[2] This acquisition apparently closed in 2021. *See* https://www.csx.com/index.cfm/about-us/media/press-releases/csx-completes-acquisition-of-quality-carriers/ (last accessed March 27, 2025.)

delay weighs against extending the deadline, particularly given that the plaintiff could have sought an extension before the deadline expired.

As for the second factor, the court finds it relevant that the plaintiff's primary claims are brought under Title VII. Title VII has an intentionally short statute of limitations; a plaintiff in Tennessee, a so-called deferral state, has 300 days to file an EEOC charge with the state or local agency authorized to grant the requested relief,[3] and then 90 days to file suit in the district court after the EEOC issues a notice of the right to sue. 42 U.S.C.A. § 2000e-5(e)(1), (f)(1). Permitting the plaintiff to extend the limitations period by an additional 108 days after the expiration of the 90 days permitted by Rule 4(m) would, that is, effectively double the statute of limitations period for filing Title VII claims. The Supreme Court has recognized that, "[b]y choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980). In light of the purpose of the short filing deadline for Title VII cases, the court finds that the defendant would potentially be prejudiced by an extension of the deadline by 108 days, beyond the "inherent prejudice in having to defend the suit." *Oakland Physicians*, 44 F.4th at 569.

As for the third factor, however, the record does not clearly establish when the defendant received notice of the lawsuit, but, because the plaintiff apparently filed an EEOC charge, the defendant would have received notice of the plaintiff's discrimination and retaliation claims and an opportunity to investigate them in connection with the EEOC charge. This factor, therefore, weighs in favor of extending the deadline.

---

[3] If Pitt did not file his charge with the appropriate state agency, the limitations period is 180 days. *Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, 899 F.3d 428, 433 (6th Cir. 2018).

The fourth factor is whether a refusal to extend the service deadline would substantially prejudice the plaintiff. It clearly would—the plaintiff had ninety days to file suit after receipt of the notice of right to sue from the EEOC, and that deadline has long-since expired. The Complaint does not make clear on what date the plaintiff's libel claim accrued, but, assuming that the one-year statute of limitations for that claim, Tenn. Code Ann. § 28-3-104(a)(1)(A), had not expired before the plaintiff filed suit on May 20, 2024, it has by now expired. Because a dismissal would effectively result in the termination of the plaintiff's claims with prejudice, due to the statutes of limitation, this factor weighs heavily in favor of extending the deadline.

The fifth factor is whether the plaintiff made good faith efforts to effect service of process or was diligent in correcting deficiencies. As discussed above, he was not. Even after the defendant filed its Reply, indicating that it still had not been served and that service on its corporate parent was not effective, the plaintiff waited another four weeks before obtaining a second Alias Summons for the defendant at a correct address.

The sixth factor does not apply, and the plaintiff has not identified, and the court is not aware of, any other equitable factors relevant under the circumstances of this case.

Only one of the *Oakland* factors weighs strongly in favor of granting an extension—that a dismissal without prejudice will function as a dismissal with prejudice, because the statutes of limitation for the plaintiff's claims have expired. The Sixth Circuit has recognized that "whether the applicable statute of limitations has run is only one of several factors that a court must consider in deciding whether to grant a discretionary extension of time" and that this factor is not dispositive. *Oakland Physicians*, 44 F.4th at 570. That is, "the running of the statute of limitations does not require a court to grant a discretionary extension." *Id.*

Aside from this factor, factor three weighs in the plaintiff's favor, while the first, second, and fifth factors weigh in favor of the defendant. That said, in weighing the prejudice to the plaintiff if the case is dismissed against the prejudice to the defendant if the case is permitted to proceed—and even given the congressional intent behind the short filing deadlines embodied in Title VII—the court finds that balance of the factors, considered together, tips very slightly in favor of allowing the plaintiff to pursue his claims on the merits. The court, therefore, will exercise its discretion to extend the service deadline and deny the defendant's motion.

## IV.    CONCLUSION

For the reasons set forth herein, and despite plaintiff's counsel's plain lack of diligence, the defendant's Motion to Dismiss under Rule 12(b)(5) will be denied. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge